# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| AOH OCCUPATIONAL HEALTH LLC, and KEN JONES, M.D., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) No. 2:16-cv-01926-DCN ) ) **ORDER** ) |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) ) |

The following matter is before the court on defendant State Farm Mutual Automobile Insurance Company's ("State Farm") motion to compel. ECF No. 12. For the reasons set forth below, the court grants State Farm's motion to compel.

## I. BACKGROUND

The instant action arises out of an insurance dispute between plaintiffs AOH Occupational Health LLC ("AOH") and Ken Jones, M.D. ("Dr. Jones," together with AOH, "plaintiffs"), and State Farm. On September 28, 2012, Dr. Jones allegedly performed an unauthorized examination on patient Gerald F. Davis ("Davis"). Compl. ¶¶ 5–7. Davis filed suit against AOH and Dr. Jones in the Court of Common Pleas for Charleston County, bringing claims for assault and battery, intentional infliction of emotional distress, vicarious liability, and failure to supervise (the "Underlying Action"). Underlying Compl. ¶¶ 18–32. At the time of the alleged incident, plaintiffs held an insurance policy with State Farm, which they believe provides coverage for defense and indemnification in the Underlying Action. Compl. ¶¶ 6, 7. However, State Farm refused

1

to defend or indemnify plaintiffs in the Underlying Action. Id. ¶ 8. On May 11, 2016, plaintiffs filed the instant action in the Court of Common Pleas for Charleston County, bringing claims for breach of contract, bad faith refusal of benefits, and declaratory judgment. Id. ¶¶ 9–18.

Objector South Carolina Medical Malpractice Liability Insurance Joint Underwriting Association ("JUA") also provided plaintiffs with liability coverage at the time of the incident alleged in the Underlying Action. Def.'s First Mot. 2–3. JUA initially provided plaintiffs with a defense in the Underlying Action, but later withdrew coverage after the state court ruled that the claims sounded in assault and battery, not medical malpractice. Id.

Relevant to this action, State Farm served a subpoena against JUA seeking production of: (1) the plaintiffs' policy with JUA, (2) correspondence between JUA and either plaintiffs or plaintiffs' attorney in the Underlying Action, John Blincow ("Blincow"), (3) all notes or documents in JUA's claim file concerning JUA's liability coverage in the Underlying Action, and (4) all bills for attorney's fees and other records of payment associated with the Underlying Action. Def.'s Mot. Ex. A, Subpoena. JUA's counsel responded with a letter outlining JUA's objections to the subpoena. Def.'s Mot. Ex. B, Objections to Subpoena. JUA did not produce any documents or provide any privilege log in its response.

State Farm filed a motion to compel on November 4, 2016, seeking to compel JUA's compliance with the subpoena. ECF No. 12. JUA responded to this motion on November 21, 2016, ECF No. 14, and State Farm filed a reply on November 23, 2016. ECF No. 17. The motion is now ripe for the court's review.

## II.  STANDARDS

   A.   **Rule 26**

The Federal Rules of Civil Procedure provide that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id. "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "The scope and conduct of discovery are within the sound discretion of the district court." Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n.16 (4th Cir. 1995) (citing Erdmann v. Preferred Research, Inc. of Ga., 852 F.2d 788, 792 (4th Cir. 1988)).

   B.   **Rule 45**

Under Federal Rule of Civil Procedure 45, a party may serve a subpoena for the production of discoverable material on a nonparty to the litigation, and the nonparty may contest the subpoena in turn. The scope of discovery for subpoena duces tecum issued pursuant to Rule 45 is the same as the scope of a discovery under Rule 26. Castle v. Jallah, 142 F.R.D. 618, 620 (E.D. Va. 1992). "[T]he burden of proof is with the party objecting to the discovery to establish that the challenged production should not be permitted." HDSherer LLC v. Nat. Molecular Testing Corp., 292 F.R.D. 305, 308 (D.S.C. 2013). A nonparty who seeks to withhold subpoenaed information on the basis of any privilege must (1) expressly assert the claimed privileged and (2) describe the nature of the withheld information "in a manner that, without revealing information itself

privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A).

### III. DISCUSSION

State Farm moves to compel JUA's compliance with the subpoena for information regarding JUA's coverage obligations in the Underlying Action. JUA objects to State Farms requests on the grounds that (1) the information sought is irrelevant, and (2) any correspondence between JUA and Blincow, or billing records with respect to Blincow's representation of the AOH and Dr. Jones in the underlying action, is protected by either the attorney-client privilege or the work-product privilege.[1]

    **1.    Relevance**

Information is discoverable so long as it "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Discovery rules are accorded "broad and liberal construction," and the concept of relevance is not limited to evidence which would be admissible at trial. <u>In re: Am. Med. Sys., Inc.</u>, 2016 WL 3077904, at *4 (S.D.W. Va. May 31, 2016). State Farm argues that information regarding JUA's coverage obligations is relevant in this action to show that it was JUA's denial of coverage that proximately caused plaintiffs' damages. Def.'s First Mot. 5. State Farm also notes that plaintiffs have identified Thomas J. McCall ("McCall") of JUA as a witness in this action to testify on "the applicability of the JUA's coverage to the [Underlying Action]," and

---

[1] JUA originally objected that the information requested was available from an alternative source. Objections to Subpoena 2. While JUA appears to have abandoned this objection, the court notes that it seems unlikely that much of the information sought—particularly, the information in JUA's claim files—could be obtained from another source.

argues that information regarding JUA's coverage obligations is at least relevant for the purpose of rebutting McCall's testimony. Def.'s Reply 2.

JUA argues that the requested information is not relevant as a matter of law because the Supreme Court of South Carolina has determined that an insurer's obligations to its insured are not affected by another insurer's duty to defend. JUA Resp. 4. In support, JUA cites to Sloan Const. Co. v. Cent. Nat. Ins. Co. of Omaha, 236 S.E.2d 818, 820 (S.C. 1977), where the court explained that "[t]he duty to defend is personal to each insurer. The obligation is several and the insurer is not entitled to divide the duty nor require contribution from another absent a specific contractual right." In Sloan, the insured was entitled to a defense in an underlying action from two insurers, Central and Liberty. Id. at 819. Liberty undertook the insured's defense, while Central wrongfully disclaimed coverage. Id. Sloan paid for its defense using the proceeds of a loan from Liberty, which only required repayment in the event Sloan was able to recover the defense costs from a third party. Id. When Sloan brought an action against Central to collect the wrongfully withheld defense costs, the Sloan court determined that because Liberty had effectively paid Sloan's defense costs, Sloan was not damaged by Central's refusal to provide a defense. Id. at 820. The court emphasized the point that Liberty was not entitled to any contribution from Central, explaining that

> [w]hen Sloan was sued, it had the right to look to both Liberty and Central or to either of them for protection. When Central disclaimed coverage, Sloan demanded full protection from Liberty. When Liberty undertook the defense of the [] action, it was doing no more than it was obligated to do under the terms of its contract with Sloan. The fact that Central also had a duty to defend was irrelevant to the rights and duties existing between Liberty and Sloan by reason of their insurance contract. Central's refusal to defend Sloan did not affect Liberty's obligations to Sloan . . . .

Id. In addressing Sloan's damages, the court stated that

> [t]he fact remains that the [] suit was concluded without any loss or liability to Sloan. Absent any damage flowing to Sloan as a result of Central's refusal to defend, Sloan had no right to recovery against Central. Moreover, although Sloan nominally paid the costs of defense, it is clear that the burden was actually borne by Liberty, through the guise of a loan receipt. Liberty, in paying for the attorneys it employed, was doing no more than it obligated itself to do under its policy with Sloan.

Id. Thus, the court concluded, "Sloan was not damaged by Central's refusal to defend since it was never legally obligated to pay the costs of defense," and "[a]bsent any damage, a right of recovery from Central cannot exist." Id. at 820–21.

The Sloan court makes it abundantly clear that, absent specific contractual language providing otherwise, an insurer's obligations to its insured are not affected by another insurer's obligations to the same insured. However, in this case, State Farm does not argue that JUA's actions are relevant its obligations to the plaintiffs—State Farm argues that JUA's actions are relevant to the causation[2] of plaintiffs' damages. The Sloan decision can actually be read to support this position. In holding that Central had not damaged Sloan because Liberty fulfilled its obligations, the Sloan court clearly recognized that where two insurers are obligated to provide coverage and one refuses, both insurers' actions must be considered in determining whether the insured suffered

---

[2] Causation is undisputedly an element of plaintiffs' breach of contract and bad faith claims. Garrison Prop. & Cas. Ins. Co. v. Cothran, 2016 WL 3753219, at *2 (D.S.C. July 14, 2016) ("In South Carolina, '[t]he elements for breach of contract are the existence of the contract, its breach, and the damages caused by such breach.'" (alteration in original) (quoting Branche Builders, Inc. v. Coggins, 686 S.E.2d 200, 202 (S.C. Ct. App. 2009))); Howard v. State Farm Mut. Auto. Ins. Co., 450 S.E.2d 582, 586 (S.C. 1994) ("Bad faith refusal to pay first party benefits under a contract of insurance includes: (1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured.").

damages. This suggests that when an insured seeks damages against an insurer, other insurers' actions may be relevant to the issue of proximate cause.

### 2. Work Product Privilege/Attorney-Client Privilege

JUA next argues that State Farm's requests seek privileged information to the extent they implicate correspondence between Blincow and JUA, or any of JUA's billing records for work provided by Blincow. JUA's Resp. 5–6. State Farm clarifies that it is only seeking information regarding JUA's coverage for Davis's claims in the Underlying Action, and stipulates that any billing records that reveal confidential information with respect to Blincow's representation of plaintiffs in the Underlying Action can be redacted. Def.'s Reply 2.

The court finds that State Farm's clarification and stipulation resolve any potential privilege issues that may exist in this motion.[3] JUA's arguments are clearly premised on JUA's belief that it is considered to be one of Blincow's clients based on the "tripartite relationship" between an insurer, its insured, and the attorney hired to provide the insured's defense. Assuming JUA is correct in its understanding of the law, Blincow was hired to defend plaintiffs in the Underlying Action. Thus, the attorney-client privilege, and any relevant work-product, would only relate to the defense of the Underlying Action, not JUA's coverage obligations or JUA's decision to withdraw coverage. Thus, the court finds that the information State Farm seeks through its

---

[3] The court also notes that it does not appear JUA provided a proper privilege log. While JUA identified the attorney-client privilege and work-product privilege in its objections, it made no effort to describe the nature of the withheld information "in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A).

subpoena—as modified by the stipulations in its reply brief—is not protected by the attorney-client privilege and the work-product privilege.

## IV. CONCLUSION

For the foregoing reasons, the court **GRANTS** State Farm's motions to compel.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 15, 2017**
**Charleston, South Carolina**